James P. Keenley (CA Bar No. 253106)
Emily A. Bolt (CA Bar No. 253109)
Brian H. Kim (CA Bar No. 215492)
BOLT KEENLEY KIM LLP
2855 Telegraph Ave., Suite 517
Berkeley CA 94705
Phone: (510) 225-0696
Fax: (510) 225-1095

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN CAMPA | Case No.: 3:23-cv-1760-MMC |
| Plaintiffs, | **PLAINTIFF'S MOTION AND NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| BOARD OF TRUSTEES OF THE SHEET METAL WORKERS PENSION PLAN OF NORTHERN CALIFORNIA; BENESYS, INC. | **Fairness Hearing:**<br>Date: November 15, 2024<br>Time: 9:00 A.M.<br>Ctrm: 7, 19th Floor, San Francisco |
| Defendant. | |

TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that on November 15, 2024, at 9:00 A.M., or as soon thereafter as counsel may be heard, in Courtroom 7 on the 19th Floor of the above entitled Court located at 450 Golden Gate Avenue in San Francisco, California, Plaintiff Stephen Campa will, and hereby does, move this Court for an order granting final approval to the class action settlement reached in this case and

preliminarily approved by the Court on July 26, 2024 (Doc. 46) and confirming the certification of the settlement class.

In support of this Motion, Plaintiff relies on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the documents submitted in connection with Plaintiff's Motion for Preliminary Approval of this same settlement, the Declaration of James P. Keenley in support of this motion, the complete record of this action, and such other matters as may be presented to the Court at hearing.

Respectfully submitted,

Dated: November 1, 2024

BOLT KEENLEY KIM LLP

By: /s/ *James P. Keenley*
James P. Keenley
Attorneys for Plaintiff

# MEMORANDUM OF POINTS AND AUTHORITIES
## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................. 1

II.  STATEMENT OF FACTS .................................................................................................... 1

    A.   Factual and Procedural Background ......................................................................... 1

    B.   Class Members Have Been Properly Notified of the Settlement ............................... 3

    C.   Class Members' Response to the Settlement ............................................................ 3

    D.   Attorney's Fees and Costs and Plaintiff's Case Contribution Award ....................... 3

    E.   The Settlement Has Been Approved by An Independent Fiduciary ......................... 4

III.  THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ...................................... 4

    A.   Legal Standard for Final Approval ............................................................................ 4

    B.   The Proposed Settlement is Fair, Reasonable, and Adequate ................................... 5

    C.   The Experience and Views of Counsel Support Final Approval .............................. 7

    D.   The Class Was Properly Notified of the Settlement ................................................. 7

    E.   The Reaction of the Class Supports Approval .......................................................... 8

    F.   The Allocation of the Settlement is Fair and Reasonable ......................................... 8

    G.   The Attorney's Fees, Costs, and Service Payment are Reasonable .......................... 9

    H.   Class Certification Should Be Confirmed ................................................................. 9

IV.  CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Burns v. Elrod*, 757 F.2d 151 (9th Cir. 1985) ............................................................................. 7

*Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ....................................... 7

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ................................................................... 7

*Garner v. State Farm Mut. Ins.*, No. CV 08-1365 (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...................................................................................................................................... 9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......................................................... 4

*In re Linkedin User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ....................................... 7

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................. 7, 8

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................................. 4

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .................... 8

*VanBronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ................................................... 4

**Rules**

Fed. R. Civ. P. 23(e) .................................................................................................................... 4

Fed. R. Civ. P. 23(e)(1) ............................................................................................................... 7

## I. INTRODUCTION

Plaintiff Stephen Campa, on behalf of himself and the Class, seeks final approval of the proposed settlement of this ERISA action, which asserts class claims for breach of fiduciary duty against Defendants Board of Trustees of the Sheet Metal Workers Pension Plan of Northern California (the "Board") and Benesys, Inc., and, in the alternative to the first claim for relief, a class claim for professional negligence against Benesys.  The proposed settlement (Doc. 45-1), which the Court preliminarily approved on July 26, 2024 (Doc. 46), will result in an amendment to the terms of the Sheet Metal Workers Pension Plan of Northern California (the "Plan") that will result in the Class receiving large increases in their pensions.

Pursuant to the Court's order, notice was mailed to the Class members informing each of them of their right to object to the settlement and the procedures for doing so.  No Class members have objected to the settlement.

The proposed settlement will result in Class receiving 95% of their potential recovery in this case and by reaching this settlement the Class will recover quickly and without any risks on appeal.  It is, by any measure, a fair, adequate, and reasonable settlement that warrants final approval.

## II. STATEMENT OF FACTS

### A. Factual and Procedural Background

The factual basis for the breach of fiduciary duty claims and the alternative claim for relief is set forth in the Complaint (Doc. 1), and discussed at length in Plaintiff's Motion for Preliminary Approval (Doc. 40).  In short, Plaintiff Stephen Campa brought this action on behalf of a class of similarly situated retirees who had their pensions incorrectly approved for unreduced early retirements based on an alleged error in Plan administration, were paid those pensions for several years, and then had their pensions reduced when the error was discovered.  Plaintiff alleged claims for breach of fiduciary duty under ERISA and sought, among other remedies, reformation of the Plan and equitable surcharge.  Doc. 1 at ¶¶ 33-39.[1]

---

[1] In an abundance of caution, Plaintiff brought an alternative claim for relief against Benesys under state law for professional negligence, this claim would only become relevant if Benesys was found not to be a fiduciary of the Plan, which is not a contested issue at this point in the proceedings.

The parties reached the proposed settlement during the course of a mediation conducted by a respected mediator knowledgeable in the field, Robert Meyer, over the course of several months of arm's length negotiations. The details of the proposed settlement are set forth in Plaintiff's Motion for Preliminary Approval (Doc. 40 at 5-6) and the settlement agreement preliminarily approved by the Court is on file at Docket No. 45-1 and available on Class counsel's website. In brief: the settlement will result in an amendment to the Plan (set forth in Appendix A of the settlement agreement) that will create a "Special Retirement" benefit for Class members under which Class members will receive 95% of an unreduced pension. If the settlement is approved Class members will receive the Special Retirement pension retroactive to the date their pensions were reduced and going forward for as long as they or their alternate payees are eligible to receive a pension from the Plan. Once the amendment is adopted, retirees and their alternate payees will automatically receive the pension payments required by the settlement, they will not have to submit claims.

Defendants, and a third-party service provider, will pay a total of $2,516,561.56 into the Plan's trust fund to finance the special retirement pensions required by the Plan amendment. This is not a common fund recovery for the Class, it will not be allocated to the Class, there is no need for a plan of allocation nor is there any circumstance in which these funds will revert to the Defendants or the service provider. The Plan's actuary has certified that this amount is sufficient to finance the trust's obligation to pay the Special Retirement pension provided for by the settlement. Declaration of James P. Keenley in Support of Final Approval ("Keenley Dec.") at ¶ 2; Exh. 1. The settlement will be administered by the parties at no cost to the Class. Settlement administration costs will not reduce the amount being paid to the Plan's trust to fund the Special Retirement pensions. Attorney's fees and costs of suit are subject to court approval and Plaintiff has, per the Court's preliminary approval order, filed a separate motion for attorney's fees and a case contribution payment (Doc. 47). The fees and contribution payment awarded will be paid separately from the funds being paid to the trust fund and will not reduce the Class's recovery.

On July 26, 2024 the Court granted preliminary approval to the settlement and directed that the Class receive notice. Doc. 46. A fairness hearing to consider final approval of the settlement is set for November 15, 2024.

### B. Class Members Have Been Properly Notified of the Settlement

Pursuant to the Court's preliminary approval order, the Court-approved notice of the proposed settlement was mailed to all class members on August 19, 2024. Keenley Dec. at ¶ 3. Notice was mailed to the known addresses of all the Class members, all of whom are currently receiving monthly payments from the Plan, at no cost to the class, to class counsel's knowledge, no notices were returned as undeliverable.

The notice mailed to Class members is identical to the notice approved by the Court and it informs them about the terms of the settlement, how to get more detailed information about the settlement, their options for responding to the settlement, how to object to the settlement, and the time and date of the settlement fairness hearing should they wish to personally appear and speak about the settlement. (Doc. 45-2). The notice itself, along with the proposed settlement, the relevant pleadings, and Plaintiff's motion for attorneys fees were also posted on Class counsel's website, as indicated in the notice, at https://www.bkkllp.com/SheetMetalWorkersSettlement. Keenley Dec. at ¶ 3.

### C. Class Members' Response to the Settlement

To date, no Class members have filed any objections to the proposed settlement and no Class members have expressed any desire to object or any negative feedback of any kind. Keenley Dec. at ¶ 4. Class counsel has spoken personally with approximately one-third of the Class and feedback from those Class members has been universally favorable and supportive of the settlement. Keenley Dec. at ¶ 4.

### D. Attorney's Fees and Costs and Plaintiff's Case Contribution Award

The proposed settlement, and preliminary approval order, specifies that Plaintiff may apply to the Court for an award of reasonable fees and costs not exceeding $167,500 and for a case contribution payment to Mr. Campa of $5,000. (Doc. 40, Exh. A at § 7.2; Doc. 46). Plaintiff filed a motion for approval of the fees, costs, and service payment on August 26, 2024. (Doc. 47). This motion was also

made available to the Class on the settlement website. Keenley Dec. at ¶ 3. As required by the settlement, the payments sought by this motion will be made by Defendants separately from the amounts being paid to the Plan's trust fund and will not reduce the increased pensions provided by the settlement. (Doc. 40, Exh. A at § 7.2). As of this filing no Class member has filed any objection or opposition of any kind to the motion, nor has any Class member expressed any negative feedback of any kind to the request for fees, costs, and a case contribution payment. Keenley Dec. at ¶ 4.

### E.  The Settlement Has Been Approved by An Independent Fiduciary

One of the condition precedents to the settlement becoming effective was review by an independent fiduciary. Doc. 45-1 at § 2.3. Fiduciary Counselors of Washington, D.C., was appointed as the independent fiduciary to review the settlement. Keenley Dec. at ¶ 2; Exh. 1. On October 16, 2024, Fiduciary Counselors delivered a report of its analysis and conclusions in which it approved of and authorized the settlement. Keenley Dec. at ¶ 2, Exh. 1.

## III.  THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

### A.  Legal Standard for Final Approval

In order for the settlement to receive final approval and become effective, the Court must determine that it is a "fair, reasonable, and adequate" resolution of this litigation. Fed. R. Civ. P. 23(e); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of further litigation and appeals. *VanBronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). In evaluating class action settlements, courts consider the settlement "as a whole, rather than the individual component parts" and are guided by several factors, including: the strength of the plaintiff's case; the risk, expense, complexity and likely duration of the litigation; the risk of maintaining class action status throughout trial; the amount offered in the settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of counsel; and the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### B. The Proposed Settlement is Fair, Reasonable, and Adequate

The settlement, if it receives final approval, will result in an excellent recovery for the Class along with funding to the Plan to finance that recovery (thus protecting the Plan as a whole). The Class members and their alternate payees will benefit from a Plan amendment that restores their pensions to 95% of the amount they were receiving before the errors giving rise to this case were discovered, this amount will *not* be reduced *at all* by the costs of administering the settlement or compensating counsel or the class representative for their time and costs. Additionally, the Plan as a whole is protected by the settlement because the settlement secures over $2.5 million dollars in funding to provide for these pensions, pensions which the Class members did not actually qualify for under the Plan terms when they retired. This factor strongly supports the fairness, adequacy, and reasonableness of the proposed settlement.

With respect to the strength of Plaintiff's case, while it is the considered opinion of Plaintiff's counsel that the case is strong, the settlement reflects that strength as it makes Plaintiff and the Class nearly whole for the economic harm they experienced as a result of the alleged breaches of fiduciary duty and protects Plaintiff and the Class from being indebted to the Plan for having received years' worth of overpaid pension benefits. Class members will not have to do anything to receive these benefits, their pensions will be increased and paid once the Plan is amended without them having to submit claims. Nonetheless, while the case is strong, further litigation is not without risk, there are potentially complicated legal issues around reliance, class certification, repayment of overpaid benefits, and the type and quantity of appropriate equitable relief to provide to Plaintiff and the Class even if they were to ultimately prevail at trial.

Continued litigation would likely take a significant amount of time to engage in substantial and costly formal discovery, numerous depositions of Plan administrative staff, 30(b)(6) witnesses, third-party subpoenas, and the Plaintiff and Class members, and would entail hundreds of hours of attorney time and significant out of pocket expenses for all parties. This would be followed by a bench trial that could take several weeks, and then potential appeals, a process that would potentially take multiple years to complete. That delay, even if Plaintiff did ultimately prevail, would be costly to Plaintiff and the

Class, all of whom are retirees who depend on their pensions to provide for their basic financial needs, pensions that would be paid at significantly lower levels than provided for by the settlement for the duration of the litigation. Retirees of ordinary means, such as the sheet metal workers in this case, need their pensions *now*, while in retirement, thus prompt resolution of this matter is essential for their financial security. All the Class members are, in relative terms, older individuals, past their working years. Thus, even though Plaintiff believes the class has a good chance of ultimately prevailing if the litigation were to go to trial, time is of the essence.

There are also significant financial risks to the Class if this matter is not resolved by way of settlement. In the event that Plaintiff and the Class did not prevail on their claims, there is a significant risk that they would be required to repay large sums of overpaid pension benefits to the Plan, collectively more than $700,000 (across a group of just 25 people). (Doc. 40-1, Keenley Preliminary Dec., at ¶ 6). Mr. Campa, for his part, is already is doing this on a monthly basis, and has been for more than a year, a reduction in his retirement income that he can ill afford. These factors thus strongly warrant final approval of the proposed settlement.

There has been no formal discovery because the parties pursued a mediation at a relatively early stage of the proceedings. However, the parties engaged in substantial informal discovery and Plaintiff was able to obtain all the necessary information to assess the strength of the Class's case and sufficient data to permit an independent actuary, hired by Plaintiff's counsel at significant expense, to perform an independent analysis of the value of the lost pension benefits to the Class. This approach to resolving the dispute reflects the good faith efforts of all concerned parties to find an equitable solution for the Class that also protected the financial health of the Plan as a whole, and by using a cooperative informal process the parties saved significantly on litigation costs and attorney time, all of which inures to the benefit of the Class and the Plan as a whole as it freed up resources to finance the special retirement pensions that the settlement will provide instead of using those resources to engage in costly litigation.

Notwithstanding the informality of the discovery process and the relatively early stage of the proceedings, the settlement was still negotiated at arm's length by highly experienced ERISA counsel for all parties, using the assistance of a well-regarded mediator with substantial experience in the field

over the course of weeks of highly contested negotiations. Doc. 40-1 at ¶ 6. Compensation for Plaintiff's counsel and the service payment for Mr. Campa were negotiated, also with the assistance of the mediator, entirely separate from the agreement regarding the proposed Plan amendment and financing of the settlement, which was reached in principle before any negotiations over fees. Doc. 40-1 at ¶ 7. The settlement is thus the product of vigorous and skilled advocacy. These factors also support final approval of the settlement.

### C. The Experience and Views of Counsel Support Final Approval

"Parties represented by competent counsel are better positioned than the courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 588 (N.D. Cal. 2015) (quoting *Rodriguez W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009)). Therefore "the recommendations of plaintiff's counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

Plaintiff's counsel endorses the settlement as an excellent result for the Class in view of the total recovery obtained, the financing secured for this recovery, the automatic nature of the payments, and the advantage to the elderly pensioners in the Class of avoiding protracted and costly litigation. Doc. 40-1 at ¶ 8; Keenley Dec. at ¶ 5.

### D. The Class Was Properly Notified of the Settlement

Under Rule 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by a propos[ed settlement]." Fed. R. Civ. P. 23(e)(1). Class members are entitled to receive "the best notice practicable" under the circumstances. *Burns v. Elrod*, 757 F.2d 151, 154 (9th Cir. 1985). Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted). Notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

The notice standard is satisfied here. All class members were mailed notice to address on file with the Plan administrator and there is every reason to believe those addresses are up to date because

each Class member is currently receiving pension benefits from the Plan. The notice mailed to Class members is identical to the notice approved by the Court and it informs them about the terms of the settlement, how to get more detailed information about the settlement, their options for responding to the settlement, how to object to the settlement, and the time and date of the settlement fairness hearing should they wish to personally appear and speak about the settlement. (Doc. 45-2). The notice itself, along with the proposed settlement, the relevant pleadings, and Plaintiff's motion for attorney's fees were also posted on Class counsel's website, as indicated in the notice, at https://www.bkkllp.com/SheetMetalWorkersSettlement. Keenley Dec. at ¶ 3.

### E. The Reaction of the Class Supports Approval

Since no Class members have objected the reaction of the Class members supports approval. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed settlement are favorable to the class members." *In re Omnivision Techs. Inc.*, 559 F. Supp. 2d at 1043. Here, Class counsel has personally spoken with a good proportion of the total class and received universally favorable feedback. Keenley Dec. at ¶ 4. Thus, the reaction of the Class supports final approval.

### F. The Allocation of the Settlement is Fair and Reasonable

This settlement does not create a common fund recovery, money will be paid to the Plan's trust fund and flow to Class members as a consequence of the Plan amendment required by the settlement, thus there is no need for a plan of allocation among the Class. But, the benefits of the settlement will be evenly distributed, neither the Plaintiff nor any segment of the proposed Class will receive more than any other, all will receive 95% of an unreduced early retirement pension that none of them would be eligible to receive but for the Plan amendment required by the settlement. While the specific dollar amounts paid to each Class member will vary depending on their years of service and other factors that go into the calculation of each individual pension, all will receive the same proportion (95%) of the normal retirement benefit they would have been eligible to receive at normal retirement age.

### G. The Attorney's Fees, Costs, and Service Payment are Reasonable

Finally, the attorney's fees and costs and the class representative service payment that the settlement permits class counsel to request are reasonable. The potential fee payment of $167,500 is below Class counsel's lodestar fees in the matter and it is quite low relative to the $2,516,561.56 being paid into the Plan's trust: it represents a mere 6.6% of the money recovered in the case (though it will not in fact reduce that monetary recovery by a single dollar). In the Ninth Circuit, 25% of a common fund is the benchmark attorney's fee award in class actions. *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). I.e., if class counsel had instead sought a fee recovery as a percentage of the funds recovered for the class in line with the Ninth Circuit's benchmark, the fees sought would be significantly in excess of $600,000. Here, neither Plaintiff nor the Class will pay *any* amount out of their own recoveries to compensate class counsel. The proposed compensation for class counsel reflected in the settlement is thus highly beneficial to the class and strongly supports final approval.

Likewise, the potential service payment of $5,000 to Mr. Campa is reasonable. His time and efforts pursuing the matter through the Plan's administrative appeals process and searching for and retaining experienced counsel to handle this litigation and his dogged and direct involvement in the litigation and the settlement negotiations are the reason the Class stands receive a special retirement benefit that leaves them nearly in the same position they were in before the erroneous pension approvals were discovered. "Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class." *Garner v. State Farm Mut. Ins.*, No. CV 08-1365 (EMC), 2010 WL 1687832 at * 17 n.8 (N.D. Cal. Apr. 22, 2010) (collecting cases). As with the attorney's fees and costs, any payment to Mr. Campa will not reduce the recovery to the Class, it will be separately paid by the settling parties.

Accordingly, the proposed settlement warrants final approval.

### H. Class Certification Should Be Confirmed

As part of granting final approval to the settlement, Plaintiff respectfully asks the Court to confirm that the Class meets the requirements of Rules 23(a) and 23(b)(1), for the reasons set forth in

the Court's preliminary approval order certifying the class.  Doc. 46 at ¶ 1.  No further information that would change the class certification analysis has come to light since preliminary certification was granted and no argument has been made against class certification.  Accordingly, the class certification should be confirmed.

## IV.   CONCLUSION

The proposed settlement is an excellent and timely recovery for Class members that will significantly improve their personal financial security while also protecting the assets of the Plan as a whole, all at no cost to the Class members themselves.  The proposed settlement bears all the hallmarks of a fair, adequate, and reasonable settlement.  Plaintiff thus respectfully requests that the Court grant final approval to the settlement and confirm certification of the Settlement Class.

Respectfully submitted,

Dated:  November 1, 2024     BOLT KEENLEY KIM LLP

By: /s/ *James P. Keenley*
    James P. Keenley
    Attorneys for Plaintiff